UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PHILLIP NORRIS,

                                    Plaintiff,
                                                        9:06-CV-0397
v.                                                       (DNH/GHL)

DOCTOR LESTER N. WRIGHT, Chief Medical
Officer,

                                    Defendant.
_____

APPEARANCES:                            OF COUNSEL:

PHILLIP NORRIS
Plaintiff, *pro se*

HON. ANDREW M. CUOMO              CHRISTINA L. ROBERTS-RYBA, ESQ.
Attorney General for the State of New York
   Counsel for Defendant
The Capitol
Albany, New York 12224

GEORGE H. LOWE, United States Magistrate Judge

### REPORT-RECOMMENDATION and ORDER

I.      BACKGROUND

          This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable David N. Hurd, United

States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Plaintiff Phillip

Norris alleged that Defendant Lester N. Wright, Chief Medical Officer for the New York State

Department of Correctional Services ("DOCS"), violated his Eighth Amendment rights by being

deliberately indifferent to Plaintiff's serious medical need for treatment for a Hepatitis C viral

infection ("HCV").  (*See generally* Dkt. No. 12, Amended Complaint [Amd.Compl.])  Defendant

moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.  (Dkt. No. 47.)  In

a Report-Recommendation and Order issued on March 12, 2010 ("March Report"), I

recommended that Defendant's motion be denied.  (Dkt. No. 53.)  By a subsequent Decision and

Order issued by District Judge Hurd, the matter was remanded to me for reconsideration of the

motion for summary judgment in conjunction with a Centers for Disease Control ("CDC")

Recommendation.  (Dkt. No. 55.)

　　　　Having carefully reviewed the matter in light of Defendant's objections and the CDC

Recommendation, I adhere to my initial recommendation in the March Report that Defendant's

motion for summary judgment be denied.

## II.　　FACTUAL AND PROCEDURAL SUMMARY

　　　　The facts associated with this action and the standards to be applied when reviewing a

motion for summary judgment are set forth in detail in the Court's March Report and will not be

re-stated herein.  (*See* March Report.)

## III.　　SUMMARY OF THE FINDINGS SET FORTH IN THE MARCH REPORT

　　　　In the March Report, the Court recommended that Defendant's motion for summary

judgment be denied because a reasonable juror could conclude that: (1) Defendant Wright was

personally involved in the violations of Plaintiff's constitutional rights set forth in Plaintiff's

Complaint[1] and (2) Plaintiff's HCV treatment was delayed (in deliberate indifference to his

---

　　　　[1]  The Court found that questions of fact existed as to whether Defendant Wright
was personally involved in the alleged constitutional violations because (1) of policies that he
promulgated in his position as Medical Director of the New York State Department of
Correctional Services including (a) the policy of requiring **all** inmates with a past history of drug
or alcohol use to complete or be enrolled in a Residential Substance Abuse Treatment Program

serious medical need) because (a) of policies put in place by Defendant Wright and/or (b) Defendant Wright failed to correct the alleged inadequacy (or delay) of Plaintiff's medical care after receiving notice of the alleged inadequacy (or delay).  The Court also recommended that Defendant's motion for summary judgment be denied on the basis of qualified immunity because questions of fact remained.

## IV.    DEFENDANT'S OBJECTIONS TO THE MARCH REPORT

### A.    Failure to take judicial notice of the entire CDC Recommendation.

In his objections to the March Report the Defendant contended that the Court erred in not taking judicial notice of the entire CDC Recommendation, which, the Defendant points out, could have been obtained on-line.  (Dkt. No. 54, at 2.)  The Defendant offers no explanation as to why, if the entire CDC Recommendation was so important, he did not provide it to the Court with his summary judgment papers.  Nor, astonishingly, does the Defendant, even now, in his objections, direct the Court's attention to anything in the entire CDC Recommendation that arguably supports his motion and that the Court did not address in the March Report.

In his objections the Defendant makes specific reference to two supposed "quotes . . . from the CDC Recommendation that supports [sic] the RSAT policy."  (Dkt. No. 54, at 2.)  The first is:

> However, given the current status of therapies for Hepatitis C, treatment is clearly recommended only in a selected group of patients.

*Id.*  Initially, the Court notes that this quotation is *not* from the CDC Recommendation but rather,

---

("RSAT") as a prerequisite to HCV treatment and (b) policies regarding pretreatment protocols for HCV positive inmates or (2) he failed to correct alleged violations of Plaintiff's constitutional rights after receiving notice of them.  (March Report at 14-19.)

according to the Defendant's affidavit in support of his summary judgment motion, it is from a "NIH Consensus Statement." (Dkt. No. 47-3, at ¶7.)[2]  More significantly, the Defendant is silent as to how this quotation provides support for his delaying HCV treatment until Plaintiff complied with the RSAT policy.  The quotation speaks only of limiting Hepatitis C treatment to a "select group of patients."  Therefore what?  This conclusory statement could be offered to support nearly **any program or policy** which seeks to limit treatment for HCV, and therefore it has no probative value with respect to the propriety of the RSAT program requirement for all inmates who had ever used drugs or alcohol.

The second quotation that the Defendant references, which, unlike the first, in fact is from the CDC Recommendation, states:

> Even intake of moderate amounts of alcohol in patients with chronic Hepatitis C might enhance disease progress.

(Dkt. No. 54, at 2.)  The March Report specifically focused on this quotation, finding that it falls

> far short of demonstrating a medically sound reason for requiring each inmate who had a history of alcohol or drug use, no matter how long ago, to attend a substance abuse program before the inmate may receive treatment for HCV.

(Dkt. No. 53, at 34.)  The Defendant, in his objections, does not even address this finding.

Considering this quotation further, it arguably, under the right circumstances, could lend support to requiring a particular individual to complete the RSAT program - namely an individual actively using alcohol (even in moderate amounts).  In this litigation, however, Defendant offered no proof that Plaintiff was **actively using alcohol**.  In fact, the only proof

---

[2]  Not surprisingly, the Defendant has not provided a copy of the "NIH Consensus Statement," and the Court declines to seek it out online.  This presumably will be a basis for the Defendant's next objections.

offered was that Plaintiff used alcohol **prior to May 19, 2003** - the date that he entered DOCS custody.[3]  (*See* Dkt. No. 47-2, Transcript of Deposition at 23:3-23:5 [plaintiff stated that **prior to incarceration** he "did a little coke, a lot of drinking and a little bit of marijuana."].)

Despite the Defendant's failure to direct the Court's attention to <u>anything</u> in the entire CDC Recommendation that arguably supports his motion and that the Court did not address in the March Report, the Court has reviewed the CDC Recommendation in its entirety[4] and finds that the following language is relevant to HCV treatment *vis a vis* alcohol use:

> Treatment of patients who are drinking excessive amounts of alcohol or who are injecting illegal drugs should be delayed until these behaviors have been discontinued for greater than[5] or equal to 6 months.[6] (Dkt. No. 54-1 at 7.)
>
> Counseling and testing can prevent disease transmission and progression through reducing high-risk practices (e.g., injecting-drug use and alcohol intake).[7] (*Id*. at 8.)

---

[3]  *See* N.Y. DOCS Inmate Locator Website, available at http://nysdocslookup.docs.state.ny.us (information for Inmate Phillip Norris, DIN 03-A-2493) (last visited August 25, 2010).

[4]  Defendant attached the CDC Recommendation to his objections, however, the copy attached was missing pages 2 through 6.  The Court has reviewed those pages on the CDC website.

[5]  The DOCS guidelines in place at the relevant time period required "[n]o evidence of active substance abuse (drug and/or alcohol) **during the past 6 months**" before HCV treatment could be authorized.  (Dkt. No. 47-3 at 16) (emphasis added.)

[6]  Plaintiff had already been incarcerated for a little more than six months when he was placed on the waiting list for RSAT. (Dkt. No. 47-4 [Ferguson Decl.] at ¶ 7 [indicating that Plaintiff was put on the RSAT waiting list on November 26, 2003].) When he completed RSAT, Plaintiff had been incarcerated for over a year. (*Id*. at ¶ 8 [indicating that Plaintiff completed RSAT in July 2004.]) Defendant presented no evidence that Plaintiff used alcohol while incarcerated.

[7]  This statement supports the proposition that alcohol counseling should be provided to persons being treated for HCV; **not** that their treatment should be **delayed** until they receive counseling.

5

Persons who test positive should be provided with information regarding the need for a) preventing further harm to their liver; b) reducing risks for transmitting HCV to others; and c) medical evaluation for chronic liver disease and possible treatment. To protect their liver from further harm, HCV-positive persons should be advised to not drink alcohol....[8] (*Id*. at 14.)

Persons for Whom Treatment Is Not Recommended [include] patients who are **currently** drinking excessive amounts of alcohol or who are injecting illegal drugs (treatment should be delayed until these behaviors have been discontinued for greater than or equal to 6 months).[9] (*Id*. at 15-16) (emphasis added.)

None of the quoted language would in any way alter the outcome of the March Report.

However, even if the Court were to conclude that the CDC Recommendation did provide sufficient support for a universal requirement that any inmate with a history of drug or alcohol use, no matter how long ago, complete an RSAT program before being allowed to **start** treatment for HCV, the remainder of the March Report, **which Defendant did not address in his objections**, would remain unchanged.  Defendant's objections wholly failed to address other issues raised in the March Report, namely whether (1) the treatment was **delayed** as a result of other policies and protocols put in place by Defendant with respect to HCV treatment or (2) Defendant failed to correct shortcomings in his medical department which may have **delayed** Plaintiff's treatment for HCV.[10] (March Report at 29-36.) Since Defendant's objections did not address any of the remaining issues set forth in the March Report, the remainder of the March

---

[8]  *See* note 7, *supra*.

[9]  *See* notes 5 and 6, *supra*.

[10]  For example, as noted in the March Report, "Wright failed to provide an affidavit from any of Plaintiff's treating physicians which might explain why Plaintiff's pre-treatment work-up took more than two years or why delays may have been medically justified, or which might establish that the delays occurred for reasons other than the policies put in place by Defendant Wright."  (March Report at 17.)

Report still stands and denial of Defendant's motion for summary judgment would be recommended on these other grounds.

  **B. Defendant's additional objections**.

  In concluding his objections to the March Report, Defendant states:

> As DOCS RSAT policy complied with the CDC Recommendation in 2003 and the [plaintiff] actually received treatment for Hepatitis C while he was incarcerated, defendant's motion for summary judgment should have been granted in its entirety. In addition, defendant Wright is entitled to qualified immunity.

(Dkt. No. 54 at 2.)  Defendant states in conclusory fashion that (1) the CDC Recommendation supported the RSAT policy and (2) Plaintiff received treatment for his HCV during his incarceration.  (*Id.*)  The Court has already discussed the RSAT policy *vis a vis* the CDC Recommendation, above, and found that Defendant did not provide sufficient evidence to entitle him to summary judgment on the issue.  Additionally, while Defendant states that Plaintiff "actually received HCV treatment for Hepatitis C while he was incarcerated," the statement is misleading, as it makes no mention of when Plaintiff received treatment or what amount of time elapsed before he received treatment.  It appears from the record that Plaintiff's treatment for HCV did not begin until more than **TWO YEARS** after Plaintiff initially requested treatment.[11]

## VI. CONCLUSION

  Having carefully reviewed Defendant's summary judgment motion in light of Defendant's objections and the CDC Recommendation, I adhere to my initial recommendation in the March Report that Defendant's motion for summary judgment be denied.

---

  [11]  Plaintiff alleges that he first requested HCV treatment in June 2003.  (Amd.Compl. at ¶ 5; Dkt. No. 51 at 8; Medical Records at 303-05.)  Plaintiff was approved for treatment on October 12, 2005 and began treatment on October 22, 2005.  (Ferguson Decl. at ¶ 16.)

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendant's motion for summary judgment (Dkt. No. 47) be

**DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report.  Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(d).

Dated: September 7, 2010
    Syracuse, New York

George H. Lowe
United States Magistrate Judge